UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Case No. 04-80903

OSCAR MALONE,                    HONORABLE AVERN COHN

    Defendant.

_____/

## MEMORANDUM ON RESENTENCING

I.

This is a criminal case. Defendant was convicted by a jury of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). On February 11, 2008, on remand from the Court of Appeals for the Sixth Circuit, see United States v. Malone, 503 F.3d 481 (2007), the Court sentenced defendant to a custody term of 24 months, to be followed by 3 years of supervised release, and a $100.00 special assessment. As will be explained, this sentence represents a variance from the guideline range of 51 to 63 months as a consequences of his classification as a career offender. Defendant has already served the custodial term and paid the special assessment. He is currently under supervised release. At the sentencing, the Court stated its reasons for the 24 month sentence on the record. This memorandum is an edited and expanded version of the Court's bench reasons.

II.

The rule regarding career offender status begins with the Sentencing Commission's duties, 28 U.S.C. §994(h), which states in part:

> (h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and
>
> * * *
>
> (2) has previously been convicted of two or more prior felonies, each of which is –
>
> * * *
>
> (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841)
> . . .

To this end, the Guidelines provide, U.S.S.G. § 4B.11, Career Offender:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is. . . a controlled substance offense; and (3) the defendant has at least two prior felony convictions of. . .a controlled substance offense.
>
> (b) . . . if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

<u>Offense Statutory Maximum</u>                              <u>Offense Level</u>

* * *

(F)   5 years or more, but less than 10 years            17

The Sentencing Commission in its November 2004, study suggests there is a certain unfairness in "Using Prior Drug Trafficking Convictions to Define Career Offenders" (such as the case here). It says:

> The SRA directs the Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized by statute" for offenders who are at least 18 years old and who have been convicted of a crime of violence or a drug trafficking offense, and who previously have been convicted of two or more such offenses. The Commission implemented this directive by creating USSG §4B1.1, the "career offender" guideline. It places each offender with three violent or drug trafficking convictions in the highest criminal history category VI, and sets the offense level at the guideline range associated with the statutory maximum penalty for the offense

It goes on to note that a disproportionate number of black offenders are subject to "the severe penalties required by the career offender guidelines. . . because of inclusion of drug trafficking crimes" and then says:

> The question for policymakers is whether the career offender guideline, especially as it applies to repeat drug traffickers, clearly promotes an important purpose of sentencing. Unlike repeat violent offenders, whose incapacitation may protect the public from additional crimes by the offender, criminologists and law enforcement officials testifying before the Commission have noted that retail-level drug traffickers are readily replaced by new drug sellers so long as the demand for a drug remains high. Incapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply committed by someone else.

The Commission further says:

> Most importantly, preliminary analysis of the recidivism rates of drug trafficking offenders sentenced under the career offender guideline based on prior drug convictions shows that their rates are much lower than other offenders who are assigned to criminal history category VI. . . . The career offender guideline thus makes the criminal history category a <u>less</u> perfect measure of recidivism risk than it would be

3

without the inclusion of offenders qualifying only because of prior drug offenses.

> There may be other rules that have unwarranted adverse impacts on minority groups without clearly advancing a purpose of sentencing. The use of . . . calculation of the criminal history score is one such possibility but there are many others (Blackwell, 2003). Continued research on how . . . that result in adverse impacts are fulfilling the purposes of sentencing will improve both the fairness and the effectiveness of federal sentencing.
>
> The federal criminal justice system must be both fair and perceived to be fair. A central aspect of fairness in America's multi-racial and multi-ethnic society is equal treatment under law, without regard to race, ethnicity or gender. America's special concern with racial justice helped lead to the creation of a sentencing system based on racially neutral rules. Evaluating the success of this system at eliminating any vestige of discrimination must be a central component of evaluating the guidelines.

<u>Fifteen Years of Guidelines Sentencing, An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform</u>, 133-134 (United States Sentencing Commission November 2004).

III.

A.

This is, as noted above, a resentencing. The background to today's sentencing is described in the Court's Memorandum on Sentencing filed July 12, 2006, and in the Court of Appeals' decision. Briefly, defendant, in the Presentence Investigation Report scored an Offense Level of 17, as follows:

| | |
|---|---|
| Base Offense Level | 6 |
| Possession of a Firearm | + 2 |
| Adjusted Offense Level | 8 |

4

      Enhancement as a Career Criminal
      Because of Two Prior Felony Convictions
      For Drug Distribution

      Total Offense Level                    17

As to Criminal History, the defendant scored a category IV without the Career Offender enhancement. The enhancement brought his Criminal History to VI. Therefore, the Offense Level of 17 and Criminal History VI yielded a sentence in the 51 to 63 month range. Without the enhancement, the Offense Level of 8 and Criminal History IV yielded a sentence in the 10 to 16 month range. Since the Court was satisfied that the category VI substantially over-represented the seriousness of defendant's criminal history, a downward departure of the criminal history category was in order. U.S.S.G. § 4A1.3(b)(1).

It should also be noted that the 2 level increase for possession of a firearm is problematic because defendant was acquitted on the firearm charges in the indictment and defendant was always willing to plead guilty to the marijuana charge. Arguably, defendant was entitled to a 2 level reduction in Offense Level because of acceptance of responsibility. This means he might well have scored an Offense Level 4 and Criminal History IV, for a sentencing range of 2 to 8 months.

<div style="text-align:center">B.</div>

In its reversal and remand, the Court of Appeals said:

> today we only address the district court's consideration of Malone's likely state court sentence because it is dispositive, and the district court's ability to disregard congressional policy statement in sentencing defendant is currently pending before the Supreme Court in <u>Kimbrough v. United States</u>, 2007 WL 2847117 (oral argument October 2, 2007).

Malone, 503 F.3d at 484.  Kimbrough, ___U.S. ___, 128 S. Ct 558 (2007) has now been decided.  Kimbrough significantly enlarges the Court's role in sentencing, particularly in a case such as this, as evidenced by the following statements from the Supreme Court:

> . . . courts may vary [from Guideline ranges] based solely on policy considerations, including disagreement with the Guidelines
>
> . . . the district court is free to make its own reasonable application of the 3553(a) factors and to reject the advice of the Guidelines
>
> . . . a district court must give respectful consideration to the Guidelines . . . Booker "permits the court to tailor the sentence in light of other statutory concerns as well."

Id. at 570.

## C.

Most importantly to the resentencing of defendant is the Sentencing Reform Act's overarching provision instructing district courts to "impose a sentence sufficient, but not greater than necessary," to comply with the purpose set forth in paragraph (2) of § 3553.  The paragraph 2 factors are

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and
>
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

## D.

6

As observed in United States v. Baird, 2008 WL 151258, *3-4 (D. Neb. Jan. 11, 2008):

> Congress established the Sentencing Commission “to formulate and constantly refine national sentencing standards,” in fulfillment of its important institutional role. . . . In that institutional role, the Sentencing Commission “has the capacity courts lack to ‘base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.’”
>
> * * *
>
> However, when Guidelines are not the result of “the Commission’s exercise of its characteristic institutional role,” such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the “ordinary case,” in which “the Commission’s recommendation of a sentencing range will ‘reflect a rough approximation of sentences that might achieve §3553(a)’s objectives.’” . . . In cases involving application of Guidelines that “do not exemplify the Commission’s exercise of its characteristic institutional role,” it is “not an abuse of discretion for a district court to conclude when sentencing a particular defendant” that application of the guideline “yields a sentence ‘greater than necessary’ to achieve §3553(a)’s purposes even in a mine-run case.”

(internal citations and text omitted).

IV.

Turning now to the particulars of defendant in consideration of the above, the Court notes:

- he has completed the 24 months’ custody term initially imposed on him. This is a sufficient period of incarceration to assure deterrence from further misconduct

- while in prison, he obtained a GED and completed a 40 hour drug education class

- while in prison he maintained clean conduct

- he was released to supervised release on November 29, 2007. He has adjusted well to supervised release. His conduct according to his probation officer has been fair to good.

- he has no history of violent conduct

- he is currently receiving outpatient drug treatment

In all, to return defendant to prison to serve additional time would punish him greater than necessary to achieve the objectives of sentencing, and would in the words of the Commission have "an unwarranted impact on [the] minority groups (of which he is a member) without clearly advancing a purpose of sentencing." This is an out of "ordinary case" given the circumstances of defendant's conviction, and to return him to prison would be following a "statutory directive" for the sake of the directive, i.e., to exalt form over substance.

Dated: February 22, 2008      s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 22, 2008, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5160